May it please the court, Kristi Hughes from Federal Defenders on behalf of Mr. Gilmore. Based on the state court record, the state court unreasonably concluded that Klein's performance was not deficient under Strickland. Fair-minded jurists could not disagree that Klein's representation fell below the prevailing standard of professional norms for two reasons. First, Klein failed to independently investigate Gilmore's criminal history. Gilmore was facing a three strikes life sentence and the only way he would avoid life is if he had no other criminal history. On those facts, there's no reasonable argument that a competent defense attorney wouldn't investigate on his own in the four months that he was retained whether the juvenile adjudications that he knows exist are serious and whether or not the client has any other criminal history. Second, Klein materially misrepresented the terms of the plea agreement in a way that deprived Gilmore of the tools he needed to determine whether or not to plead guilty. Judge Casterly said at the settlement conference, as long as there's no other criminal history beyond these three convictions alleged to strikes, I will strongly consider striking two strikes, meaning Gilmore would avoid a life sentence. But when Klein relayed that sentencing agreement to Gilmore, he represented it as the judge will strongly consider striking strikes as long as you have no other convictions beyond what we've already discussed. And that's a material difference because, and it's in the state record, Klein was aware that Gilmore had juvenile adjudications. I wondered about that. I looked at that carefully. And the best I could do was that, I mean, the state court record, as I understand it, consisted of the petition and the attachments which included the letters from Klein to the state bar. Correct. And also some of the letters from Klein to the prosecutors and back again. And there's another letter in 2005 that Klein writes to Gilmore that sort of fleshes it out as well. Right. Okay. And all I could see there was that he said something like Gilmore said there was no substantive issue with regard to the juvenile record or nothing substantive. So is it from there that you deduce that he knew there was something, but it wasn't substantive? No. Well, there's a few places. At the sentencing, that's one of the places, yes. He says that Gilmore had repeatedly assured him before the plea deal that he had some juvenile history, but it wasn't substantive. He also says at the sentencing hearing, he says, up until today, everything that I had heard about about his juvenile history was a series of misdemeanors. But that wasn't in the state court, attached to the state court petition, right? The sentencing transcript is in the state court petition. Oh, is it? Yes. And I apologize. I left my wonderful ER sites on the bed in the hotel room, so it's going to take me one second. I apologize, Your Honor. I believe the transcripts start at supplemental excerpts 195, which starts with the change of plea hearing in November, and then the sentencing transcript begins on page 205. And that one attached to the petition that was before the state court appeal? Correct. And there might be some confusion because the state court says we looked at these few things, but there's actually more than that in the petition. Then that was my other question. I mean, it appeared that the state court of appeals didn't know what was before it. It said he only had this, this, and this, and that was just wrong. In fact, he had a bunch of other stuff. Is that right? I believe so. I think the state court made an unreasonable determination. Right. So that's my other question. Does that bump us out of Edco altogether? They just looked they did not look at the record and the conclusions were wrong about the facts. I believe so. I mean, I think that they did make an unreasonable determination of the facts in light of the entire record that was before the state court. Because they said we only have X, Y, and Z, and, in fact, they had quite a lot more than that. Correct. And the things that were substantive, really, it didn't look at. It looked at the change of plea form, you know. And they therefore could not understand why this all made a difference and it actually made a huge difference. Correct. And so not only did they unreasonably apply the Strickland standard, but they also reached an unreasonable determination of the facts in light of the entire record that was before it, both of which I think take us out of the pinholster bar on considering the facts that were before the Federal court at the evidentiary hearing. Could you give me the record site again, the SCR site that you say the transcript was on? The transcript of the sentencing hearing starts at the supplemental excerpt 205. Gilmore's entire habeas petition starts at the supplemental excerpt 52. And so on page 209, Klein tells the court, in looking at the probation report I just got yesterday, there's a lot of juveniles, he says. All prior discussions, juvenile history that I had heard, he had some series of misdemeanors and some theft and that kind of thing. But the things that we're reading about here are age 12, age 13, age 14. So it's clear that he's discussed with Gilmore his juvenile history. He knows that he has some outstanding. He also says, again, in the state bar letter, which is a supplemental excerpt 224, he says that he was aware that Gilmore had some criminal history, but that Gilmore had apparently reached a legal conclusion that it wasn't anything serious or substantive. And Klein had relied on Gilmore's conclusion about the seriousness of his own criminal history to tell him to plead guilty so that he would avoid a life sentence and to not do any further investigation on his own. One more point I want to quickly make. What do you mean? Part of the issue in this case is the time limitation of the offer. I mean, if he'd been given two weeks to accept the offer, but in one thing, but he had one day. Now, I understand your argument. He should have done the investigation prior to that time. But let's assume that he didn't have time to do it and no one suggested he did. That's a critical fact for you. But why wouldn't it be reasonable for a defense attorney faced with this situation to make a calculated risk saying the prosecution doesn't say it has anything, my client doesn't say he committed any crimes, I think this is okay, and then make the recommendation? Well, I think the key is what Your Honor said, a calculated risk. This wasn't a calculated informed risk that he took. He knew that if the DA represented to him, he has nothing beyond these three convictions. That was wrong because he knew he had juvenile adjudications. He knew that Gilmore previously was confused about his own criminal history. He writes some letters to the DA where he says my client's adamant he doesn't have a robbery conviction from 91. My client's adamant that doesn't count as a strike. So if he's going to rely on Gilmore and the DA in those two days to say, okay, this is a calculated risk, that's an unreasonable and uninformed basis to fail to figure it out on his own. I think at that point he should have rejected that plea offer. There's nothing in the record that the judge could do. Where does this notion that he only had a date it was safe to come from? That was a limitation I think the State put on it. But where was it in the record? I'm not sure it was in the State court record. And in the Federal court record, what I saw was I think he said it, but the prosecutors said otherwise. I believe that he says in the State bar letter, although Your Honor may be correct, that he doesn't put that two-day limitation in the letters. I don't think it was there. And I think, and I thought that Ms. Trevino said when she testified something like we're not going to change the, we weren't going to change the offer, but he could have, he could have, he had time to accept it. She testified that it was her final offer, it wasn't going to change, correct. But there wasn't a limitation put on it. There also wasn't any, there's nothing in the record that the judge put some sort of time limitation on the consideration of striking strikes. There's nothing that had, for instance, Gilmore later gone forward and pled to the robbery conviction. There's nothing that if he hadn't had serious history, the judge couldn't have struck strikes then. He could have still received, he wouldn't have gotten the eight years, but he could have gotten the 16-year sentence at that point. Again, not an indeterminate life sentence without a release date, which is what he ended up with based on Klein's misadvisable on the lack of investigation. Well, at the end of the day, though, how is he, let's say we unwind all this and he's put on trial and the facts are fairly well undisputed, he's still facing all of this sentencing enhancement, right? I mean, what's the reasonable possibility that he's going to get a better deal? Well, I have two responses, Your Honor. First of all, in Underhill, the question is whether or not, the plea outcome would have been different. But second of all, I don't think this is a slam dunk case at all. There's no dispute that he was drunk at the time, so he has a voluntary intoxication defense to the robbery and to the criminal threats charge. I think the State is going to have a difficult time proving under the criminal threats that he intended it to be taken as a threat. He said that he was joking, but he never. He didn't take the money, right? Correct. He never took it out of the store. Correct. He was playing this game with the clerk. Right. He says to the clerk, I'm just joking with you, he gives the money back twice. The clerk says he was frightened, although it's not clear he took it as a threat because he continues to help customers. He doesn't call the police. So you think that maybe, just to summarize, you have a merits defense. I understand that. But if he were convicted, probably facing the same sentence, don't you think? Correct, unless the judge somehow found that he had the discretion to strike. Actually, a worse sentence. Maybe. Pardon? Actually, a longer sentence. A longer sentence, probably. Well, a longer sentence only in the sense that, I mean, he's still going to get that indeterminate life sentence. Right. The number at the beginning of that 25 to life is only the date on which he can ask for parole. So it's not a release date for him. Life is life, essentially. So I think he could possibly end up with the same sentence if he's convicted. But, again, as Your Honor noted under Hill, that's not the correct determination of prejudice. Okay. Thank you. We'll give you a minute for rebuttal. Thank you. Good morning. I'm Kevin Viena, California Deputy Attorney General for Appellee and Respondent in this matter. All right. A couple of points I'd like to begin with, and I hope to remember to get to some points that you asked, Your Honor. But the first is the question of no defense or whether this was a defensible case. At excerpts of record, page 206, Mr. Klein explains the way he saw the case as the defense counsel. He essentially saw no defense to robbery or attempted robbery for the two times that Gilmour took the money from the clerk in the store. And then says, and then follows on in the next paragraph to say there certainly was no defense to the threat charge. That is, the store clerk said he was afraid. Mr. Gilmour first threatened to pop him, and I think the connotation there is to shoot him. And then the second time, when he demanded the money, he reached behind his vehicle. I mean, all that goes to the question that Judge Thomas raised, which is essentially is this wise, but it doesn't actually go to the merits of anything, does it? Okay. All right. But, well, I'm not sure where to begin. It's an odd factual case, but that's another matter. Yeah. But part of what makes it odd is whether there were crimes or not, and a sort of offhand statement by the preliminary hearing judge. The prosecutor didn't see it as odd. I think my sense is it's a prosecutable case. And I take your point. The defense counsel said he didn't think it was defendable. And it took only one felony conviction. And if there had been one felony conviction, Mr. Gilmour faced what looks to me like 37 years to life. So, I mean, so there were some benefits to this plea agreement even in any event, some benefits of the plea agreement. I tried, I'm not sure I succeeded, but I tried to develop the context in our brief that the defense counsel in this case was not uninvolved or unconcerned. He worked hard for his client and was unsuccessful with the district attorney's office in getting a good deal of discovery in this case. Now, aside though from the discovery, I mean, did counsel have other avenues of obtaining the juvenile record? Well, I mean, he had some other avenues and he took advantage of them. He asked Mr. Gilmour, are there ways that he could have done it? It is probable that he could have gotten access to some juvenile records, if you know what juvenile record to ask for, and ask for them. But he'd been, his client had told him there was nothing. He can't ask for any juvenile records concerning your client and then have them produced by the juvenile courts? It's hard to get juvenile records before the probation report is done. Mr. Klein said that. I think Mr. Vino said that. I think it's referred to at both excerpts of record, page 208, and excerpts of record, page 474. But his client, he never said his client. Well, he did say that his client originally said he didn't have anything, but apparently by the time of these, the negotiations, his client didn't say there was nothing. He just said it wasn't significant. Yes, Your Honor. Mr. Klein said to him, I'm not interested in DUIs. I'm not interested in the misdemeanors that you've described to me. I want to know if there's something serious. Okay. But what about the argument that is now being made that that alone, what he did know, was sufficient for him to know that this wasn't going to apply? It's interesting how the claim has developed. And that's fine. I understand it's developed. But what about it? Well, the claim is that now it's no longer that Mr. Klein is a liar or a cheater. Now it's that he was stupid. Okay. He signed up for an agreement that made no sense. And I think that's preposterous. Here's a counsel who we know had undisputed experience in 100 plea bargains in three-strikes cases. It's preposterous because it isn't true? Or it's preposterous what? It's not true. But now we're back to the pinholster problem, okay? Because we have a record. Later on there was an evidentiary hearing. Yes. And there were credibility determinations made. But if we're going to follow pinholster, don't we say forget all that, at least initially? And we look at what the state court had. Yes. What the state court had on this point, as I understand it, I was not aware, but it does include actually the state court sentencing transcript where he does say I knew about the thefts and so on. And he does say in his letter to the state bar that there was nothing substantive. So it appears that he knew of something. Yes, Your Honor. And my response to that is I think this. I mean, there's not a great deal of discussion in the state court opinion. They said you haven't shown, you haven't tried a prima facie case. And I think the reason for that is twofold. One is they say we don't, we're not convinced that there was no investigation of your juvenile record done. He hadn't demonstrated that by. Well, they weren't looking at the right material. I mean, why don't we just forget about the state court? Why don't we, it wasn't just a per se unreasonable thing. They said, they enumerated what they said was attached to the petition and they were wrong, weren't they? Well, perhaps incomplete. And as to anything that mattered. See, I think the state court, and I think myself, that what mattered was this. There was nothing that Mr. Klein said that could have misled, that could have misled Gilmore. But the state court couldn't have made a determination about that because he didn't seem to know it existed. But they did know what happened. And they did have the record of, the record of his plea and the plea agreement where he repeatedly said there's no promise. There's no deal. There is no promise with regard to sentencing. The trial judge told him repeatedly, I am not promising that you'll be sentenced as a one or a no-striker. But that's not the claim, or that's not the only claim at this point. That seems to be wrapped up in all of the claim, I believe. That is, his lawyer had asked him, is there something significant in your juvenile history? Repeatedly. Gilmore had denied it repeatedly. The trial judge said you've got a chance to argue for this and I may sentence you this way, but there's no promise. The idea for that plea colloquy is to avoid these very problems. I have a slightly different question. When the court of appeals, the court of appeals makes the statement that even if his attorney did not review his juvenile record, Gilmore does not show how the absence of that review would affect a different result. Did the court apply the correct legal standard? Because it seems to me what it's referring to is the sentence. It's not referring to whether or not Gilmore would have entered into that particular plea that he did. And isn't the standard supposed to be whether or not he would have entered into the plea? I believe, yes, I agree you're correctly stating the standard. And I agree that that's a, that your statement is a reasonable inference for what the State Court said, but I think that's not what they said. I think they're saying you were, nothing affected your plea. His advice did not affect your plea because the trial judge made it so clear that you were facing 37 years to life. They don't really say that. They just say that even, you know, that it would affect a different result. I don't, that's at least ambiguous. Yes, I agree it's ambiguous. There's not a great deal of discussion there. What I see in the California court of appeals opinion is he says, they say he submitted his guilty plea form, abstract of judgment, plea hearing transcript, and request for a certificate of probable cause. All right. And we know that in fact there was a fair amount more. And then when they get to this issue, they say that Gilmore asserts trial counsel did not personally investigate his case. Even if he didn't review the juvenile record, it does not show how the absence of that review would affect a different result. Now, that may be a plausible determination if you're only looking at the documents they said they were looking at. But in fact, if you looked at the letters and the other information that was in fact attached to the habeas, it seems to me it wasn't very hard to figure out why the absence of the review would have affected a different result. I think there's also something implicit in what they said, and that is their familiarity with the difficulty of obtaining juvenile records until you get to actual sentencing, until the probation report has been put together. And while it is possible to get those, I believe it's inferable, or it's an inference that can be drawn from Klein's testimony, that's not the standard of practice. The prosecutor provides that information, and even the prosecutor doesn't have it with certainty. He said that in his bar letter, too. Yes, sir. What about the state of the record on the one-day time limit? When the question was asked, I began looking through my record. If you look at excerpts of record page 78, that's in the report and recommendation. Magistrate Judge Adler characterized the record this way, that she said this offer is open until this Readiness Conference is over. But she came to that conclusion based on the evidentiary hearing? Yes, I think based on the evidentiary hearing. I mean, I'm still not clear. I mean, it seems to me that in a case involving alleged ineffective assistance of counsel, that you can only have that kind of hearing. I mean, you can only prove that claim in many instances through an evidentiary hearing. If the state doesn't hold a hearing, doesn't the federal court have to hold one? The federal court may hold one after pinholster if the state court's determination was unreasonable under 2254D, I think under D1 or D2. I think that Judge Adler believed by the end that he properly held an evidentiary hearing because he thought the state court was wrong on the facts, on the question of prejudice, and that allowed him to hold the evidentiary hearing. We have disagreed with that, saying that the state court could reasonably look at all of the affirmations made by Gilmour. They could have, but they didn't. Well, I believe that's the problem. They could have, but they specifically didn't. They listed some documents. I don't think they purported to relate every single thing that was in his petition that was before them. But not only does the list not include all of it, but their, you know, sort of throwaway sentence that there's no way to tell how this would have hurt him. I mean, it's one thing to say we don't think there was prejudice, but it's another thing to say that it doesn't show how it could have hurt him. It certainly shows how it could have hurt him if you read all that stuff. I think a reasonable person could interpret it the way you have, Your Honor. I think a reasonable person could interpret it as well as saying since he pled guilty, knowing he was looking at 37 years to life, he hasn't shown that anything would have changed it. Thank you for your argument. And we will hear rebuttal. I want to thank you as well. I'm not spending a lot of time on deference, which we understand, and getting to the heart of the argument. It's appreciated. Can I just have one or two minutes real quick? Yes. Thank you. Just first to your question, Judge Berzon, there is nothing in the state court record that I could just quickly find about the two days. That came up in Christine Trevino's testimony at the evidentiary hearing. Second, I want to address what the person said. It couldn't have been Christine Trevino's because she seemed to say there wasn't a two days. Pardon? It couldn't have been Christine Trevino's because she seemed to say that there wasn't a two-day limit. It must have come from his lawyer. But any event, it was in the evidentiary hearing. Correct. Okay. I want to address the plea colloquy and how that may just do away with the whole thing because that may cure Klein's misadvisals. I think that's wrong for three reasons. First of all, that plea, the advisal that comes to the plea colloquy is entirely consistent with what Gilmour understands the terms of the plea agreement are based on Klein's misrepresentation. He hears the judge say, your lawyer is going to make a motion to strike strikes. You may get 27 or 37 to life if I don't strike those strikes. Gilmour thinks, great, you're going to strike strikes as long as I don't have anything beyond the juvenile history that I've already discussed with my lawyer. So the risk of a life sentence when he hears the judge say that is basically nil in his head because Klein has misrepresented the terms. I think that's why this case is more like Chison and Ayala. I don't mean by Klein misrepresented the terms. I mean, you mean because he didn't tell him that there was a caveat on his willingness to consider, not because he never represented that the judge was necessarily going to do this, but he predicted he would do it. Correct. According to the state court record, I don't think we have some sort of guarantee or anything like that. But he misrepresented the qualifier, which was very important because in Gilmour's mind, he discussed juveniles. And again, in the state court record, Klein says the juveniles were not part of this deal. No one discussed the juveniles with Judge Casserly. So all Judge Casserly thinks is there's three convictions that are alleged as strikes. And that's not what Gilmour hears. Had Gilmour – had Klein told Gilmour, as long as you don't have anything beyond these three convictions alleged as strikes, he's going to consider striking two strikes, Gilmour would have known there was a huge risk of a life sentence. The problem with Klein's misadvisal or misrepresentation is he doesn't accurately communicate the risk that Gilmour is facing when he enters that guilty plea. Well, he didn't know the risk. Pardon? He didn't know the risk, in part. Well, I think to the extent he didn't know the real risk, it's because he unreasonably failed to investigate. But I think because he knew that there were juveniles out there, he should have known that Judge Casserly wasn't going to be able to exercise his discretion under Romero and strike those strikes. I know I'm interrupting the flow of your argument. I wanted your reaction to this. In the letter to the State Bar, Klein explains why he didn't go after the juvenile records, and he says, I can state unequivocally – well, let's see. Where am I? The reason this occurred is related to a potential problem common to all cases of this type. In every case like this, I have to rely on the discovery in evaluating the defendant's juvenile record and the likelihood the court will consider striking. However, as a result of various rules regarding privilege, among other things, I do not have any substantive records regarding a defendant's juvenile history. And then he goes through his normal practice. So he's explaining why he didn't have access. I don't think that's actually accurate. In the state court record, he then says, oh, after he was already sentenced, I called the clerk's office, it was a quick phone call, and I got the information about his juvenile history. He also – he could have filed that 827 motion. He could have very simply gotten certified conviction documents for Gilmore's 1997 burglary. That references a juvenile commitment. So he would have been tipped off that Gilmore had at least some serious juvenile history because he'd been committed to CYA custody. Klein didn't take that very simple step of ordering the certified conviction documents of the convictions that were alleged as strike priors. Okay. Any further questions? Thank you for your argument. Thank you. The case has now been submitted. Thank you both.
judges: Thomas, Wardlaw, Berzon